IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEITH BOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:15-cv-00501-NJR |
| ) | |
| M. DUNCAN, and ) | |
| WALTER FRISON, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court for docket management related to several pending matters, namely Plaintiff's Motion for Recusal (Doc. 15) and payment of the filing fee (Doc. 7 & Doc. 14).

Despite the fact that this case has not even progressed to screening, Box's history in this Court is a bit complicated. By way of background, Box is a prisoner at the Jefferson City Correctional Center in Jefferson City, Missouri. He filed his initial complaint in this Court on May 4, 2015, and his case was assigned to Judge Yandle. Box's complaint alleged a long-running conspiracy by Missouri and Illinois prison officials to kill Box and his 300-plus "girlfriends/children's mothers" (an auspicious list of women that includes Beyoncé Knowles and Halle Berry). Box claimed that Mindy Duncan, the Deputy Clerk of this Court's Benton division, recently joined the conspiracy when she returned subpoenas that Box sent to this Court for some of Box's girlfriends. Those returned subpoenas were seen by Walter Frison, Box's prison caseworker, thereby revealing the identities of Box's girlfriends to prison officials and allowing those officials to proceed with their plan to attack these A-list celebrities.

With his complaint, Box filed a motion to proceed as a pauper and pay the Court's filing fee in installments.  The rub is that Box is a frequent filer—he has run up over three strikes by filing frivolous cases in the federal courts[1]—and so can proceed as a pauper only if his complaint alleges that he was "under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  On May 22, 2015, Judge Yandle reviewed Box's complaint and found that it did not allege any credible risk of serious danger.  The closest thing to "danger" in Box's complaint were his allegations of a vague and difficult-to-follow conspiracy among prison officers, judges, and state employees to harm Box and his A-list belles, but Judge Yandle found those allegations to be fantastic and delusional.  Accordingly, she denied Box's motion to proceed as a pauper, and she gave Box until June 12 to pay the full filling fee or his case would be dismissed.

Since Judge Yandle's order, Box has filed a number of motions in this matter and brought another action—all in an apparent effort to skirt around Judge Yandle's pauper order.  First, Box filed several motions in his initial case, including a motion for an extension of time to pay the filing fee and several motions to add defendants and allegations to his complaint.  Second, Box filed a separate complaint in the United States District Court for the Central District of Illinois; the new complaint raised the same allegations of a murderous conspiracy against Box and his girlfriends as Box's first complaint, but named several new defendants, including many judges of the Eastern District of Missouri and Judge Yandle of this Court.  The new case was transferred to this Court on June 12, 2015, numbered 3:15-cv-00658, and by random draw assigned to Judge Yandle.  Given the allegations in the new complaint, Judge Yandle recused herself from the new case and the old case, and both were transferred to the undersigned judge.

---

[1] Box files most of his federal cases in the United States District Court for the Eastern District of Missouri; *Box v. Nixon*, No. 4:15-cv-00021, 2015 WL 1935837, at *2 n.1 (E.D. Mo. Apr. 28, 2015), details three of his previous strikes under the Prison Litigation Reform Act.

On June 24, 2015, the Court disposed of the pending motions in Box's first case and gave Box until July 8 to pay the Court's filing fee or face dismissal. Since then, Box has filed a motion asking this judge to recuse herself. This order will deal with the pending matters in Box's first case; a separate order will issue today regarding pending items in Box's new case.

The first item pending in Box's initial case is his motion to recuse. The motion really seeks two things: it asks this judge to recuse herself due to bias, and it seeks to add allegations of danger to Box's complaint. The Court will deal with the recusal matter first. 28 U.S.C. § 144 addresses the standard for recusal and requires a judge to recuse herself if a party files a timely and sufficient affidavit suggesting bias or prejudice against the party. *Tezak v. United States*, 256 F.3d 702, 716-17 (7th Cir. 2001). The affidavit is not sufficient unless it includes facts about times, places, persons, and circumstances that would convince a reasonable person that the judge is prejudiced—"simple conclusions, opinions, or rumors are insufficient." *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004). Once more, the source of bias must be extrajudicial; in other words, it must not have derived from "what the judge has learned through participation in the case." *United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir. 1985).

Box's recusal motion must be denied. For one, the motion is not supported by an affidavit: the motion is not even signed, let alone sworn or otherwise certified. In addition, nothing Box alleges would convince a reasonable person that this judge is biased against Box. Box seems to claim that this judge must be conspiring against him because she has ruled against him in the past, but that kind of non-extrajudicial activity does not suggest bias or prejudice by a judge. *See Lieteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). Box also suggests that this judge must be biased because Box has sued another judge on this Court, but the mere fact that a litigant

Page **3** of **7**

names another judge on a Court as a defendant in a separate case does not imply that all judges on that Court are biased. In the end, Box has not backed up his recusal motion with an affidavit, and his allegations do not suggest bias by this judge, so the motion to recuse must be denied.

Bound up in Box's recusal motion are additional allegations concerning the conspiracy to harm Box and his many girlfriends, which—like his recusal arguments—are quite difficult to make out. The Court will construe these arguments as a motion to reconsider the Court's previous decision to deny Box's pauper application. This motion, like his last one, must be denied. To begin, the motion attempts to add facts to the imminent danger inquiry, but as Box was told in Judge Yandle's order, the initial assessment of imminent danger is made by looking at the allegations in the complaint. *See*, *e.g.*, *Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007) (in deciding whether a prisoner faced the requisite harm under § 1915, courts maintain "a singular focus on the facts alleged in the complaint"); *Ibrahim v. Dist. of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) ("In determining whether [a prisoner] qualified [for the imminent danger exception], we look to the complaint . . . ."); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (court evaluating an *in forma pauperis* request "must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger"). And a plaintiff cannot add to the complaint by filing piecemeal motion after piecemeal motion. *See*, *e.g.*, *Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2015) (proper method to add or delete claims is via Rule 15, which allows a "plaintiff to amend his complaint – including by adding or dropping parties and claims"); *Spreck v. U.S. Veterans Admin.*, 67 F. App'x 963, 964 (7th Cir. 2003) (court "not required to incorporate [a plaintiff's] revised caption into an earlier submitted complaint and

accept the complaint piecemeal"). Because the allegations in the original complaint do not support credible imminent danger, pauper status was properly withheld.[2]

But even if the Court considered the new facts offered in Box's recusal motion, the allegations in the motion do not suggest a credible risk of imminent danger. Box's new motion seems to allege that Missouri and Illinois officials are conspiring to harm him and his A-list girlfriends and other loved ones with the help of private celebrities (like Magic Johnson and Michael Jordan) and former death row prisoners who have been released from custody on prison officials' orders. This conspiracy led to past injuries against Box, his girlfriends, and his allies: Box says that someone (he does not specify who) fractured one of his hip bones, slammed him into a concrete floor while handcuffed, and attempted to poison him "through the prison store" in May 2013 to further the conspiracy; that other parties (again, we do not know how) attempted to poison his cellmate in 2015 to further the conspiracy; and that some of his relatives and loved ones (celebrities and all) have been stalked by prisoners who were released from custody by state officials with a directive to murder – again to effectuate the conspiracy against Box.

These allegations do not get Box around the prepayment requirement for two reasons. First, while Box's motion is difficult to read and understand, most of the allegations of harm to Box appear to have occurred in the past, and thus they do not support a risk of current, imminent harm. *See Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1174 (7th Cir. 2010) (exception for imminent injury designed "to prevent impending harms, not those harms that had already occurred"). Second, and more fundamentally, Box's complaint describes a long-lived, extremely wide-ranging, fantastic, and apparently hopelessly-inept conspiracy that has had Box's death as its goal for several years. To the extent Box is trying to demonstrate imminent danger with

---

[2] Box has been repeatedly told that, if he wishes to flesh out the allegations of imminent danger in his initial complaint, he must file an amended complaint. He has ignored that directive.

actions done or threatened by unspecified individuals involved in this conspiracy, the allegations in total are irrational and delusional, and thus cannot support imminent danger under § 1915(g). *See*, *e.g.*, *Day v. City of Chicago, Ill.*, 507 F. App'x 595, 595 (7th Cir. 2013) (claim that police attempted to "poison [a prisoner] by placing insects in his room at the YMCA" was "utterly fantastic"); *Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008) ("irrational or wholly incredible" allegations of harm should be rejected); *Ciarpaglini*, 352 F.3d at 331 ("conclusory or ridiculous" claims not credible for purposes of determining a risk of imminent physical harm); *Gibbs v. Cross*, 160 F.3d 962, 967 (3d Cir. 1998) ("clearly baseless," "fantastic" or "delusional" statements of harm should not be credited by the courts). Because these new facts do not support a credible danger, Box's motion to reconsider must be denied.

With the matters in the recusal motion out of the way, the only remaining item is the Court's filing fee – Box was given until July 8, 2015 to pay it. That day has come and gone, so Box's complaint must be dismissed without prejudice, and his case will be closed.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's motion for recusal (Doc. 15), construed as a motion for recusal and motion to reconsider the denial of pauper status, is **DENIED**.

**IT IS FURTHER ORDERED** that, for the reasons stated above, this action is **DISMISSED without prejudice** for failure to pay the Court's filing fee and for failure to abide by an order of the Court under Federal Rule of Civil Procedure 41(b).

The **CLERK** is **DIRECTED** to close this case and enter judgment accordingly.

Plaintiff incurred the obligation to pay the filing fee for this lawsuit when it was filed, and that obligation continues regardless of later developments in the lawsuit, such as denial of leave to proceed *in forma pauperis* or dismissal of the suit. *See* 28 U.S.C. § 1915(b)(1) & (e)(2);

*Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). To date, Plaintiff has paid no portion of the filing fee. Therefore, a separate order will issue for the prison Trust Fund Officer to deduct payments from Plaintiff's trust fund account until the filing fee is paid in full.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999). A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).

**IT IS SO ORDERED.**

**DATED: July 16, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**